1705703v4
00420.327

1705703v4
00420.327



TO THE HONORABLE COURT:

Lexington Insurance Company ("Lexington" or "Plaintiff"), by its attorneys, petitions this court pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, Texas Civil Practices & Remedies Code § 37.001, *et seq.*, and Federal Rule of Civil Procedure 57 for construction of insurance policies and a declaration that (1) Midcontinent Express Pipeline, LLC ("MEP") and its affiliates, Kinder Morgan, Inc. and Kinder Morgan NatGas Operator, LLC (collectively, the "MEP Parties") are additional insureds under an insurance policy issued to John Wood Group, Inc. by Defendant ACE American Insurance Company ("ACE American" or "Defendant"); (2) the MEP Parties, as additional insureds under the ACE American policy, are entitled to a defense of underlying lawsuits related to a gas pipeline explosion; and (3) ACE American is liable to Lexington for contribution for the cost and expense incurred to date and arising in the future defending the MEP Parties in the underlying lawsuits.  Lexington alleges and states as follows:

## PARTIES

1.      Lexington is a Delaware corporation with its principal place of business at 100 Summer Street, Boston, Massachusetts, 02110-2103.

2.      Upon information and belief, Defendant ACE American is a Pennsylvania corporation with a principal place of business at 436 Walnut Street, Philadelphia, PA 19106. ACE American may be served with process through its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, TX, 75201.

## JURISDICTION AND VENUE

3.      The amount in controversy in this action is in excess of $75,000, exclusive of interest and costs.  The parties to this lawsuit are domiciled in different states and there is

complete diversity.  Therefore, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

4.      Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Houston, Texas, including, but not limited to, the formation and execution of the agreement providing the MEP Parties with additional insured status under the ACE American insurance policy.

5.      This Court has personal jurisdiction over ACE American.  ACE American has minimum contacts with Texas by issuing the insurance policy at issue in this action to a Texas entity and by issuing the policy with the knowledge and expectation that it would cover risks partially or substantially occurring in Texas.  Accordingly, ACE American has purposely availed itself of the benefits and protections of Texas law and is subject to this Court's jurisdiction.

## FACTUAL BACKGROUND

**The Professional Services Agreement Between MEP and Mustang**

6.      MEP and Mustang Engineering L.P. ("Mustang") entered into a Professional Services Agreement (the "PSA") effective January 1, 2007 and executed by Mustang and MEP on January 30, 2007 and February 28, 2007, respectively.

7.      The PSA, in relevant part, contains the following provisions:

> 13.     GENERAL INDEMNITY
>
> CONTRACTOR SHALL DEFEND, INDEMNIFY, AND HOLD COMPANY HARMLESS FROM AND AGAINST ALL CLAIMS, DAMAGES, LIABILITY, LOSSES AND EXPENSES INCLUDING, BUT NOT LIMITED TO, ATTORNEY'S FEES AND OTHER COSTS OF DEFENSE ATTRIBUTABLE TO BODILY INJURY, SICKNESS, DISEASE, DEATH OR INJURY TO THE EMPLOYEES OF CONTRACTOR OR DESTRUCTION OF PROPERTY OF CONTRACTOR, INCLUDING LOSS OF USE RESULTING THEREFROM AND ARISING OUT OF OR RESULTING FROM THIS

AGREEMENT OR THE PERFORMANCE OF WORK HEREUNDER, IRRESPECTIVE OF COMPANY'S FAULT OR NEGLIGENCE. LIKEWISE, COMPANY SHALL DEFEND, INDEMNIFY AND HOLD CONTRACTOR HARMLESS FROM AND AGAINST ALL CLAIMS, DAMAGES, LIABILITY, LOSSES AND EXPENSES INCLUDING BUT NOT LIMITED TO ATTORNEY'S FEES AND OTHER COSTS OF DEFENSE ATTRIBUTABLE TO BODILY INJURY, SICKNESS, DISEASE, DEATH OR INJURY TO THE EMPLOYEES OF COMPANY OR DESTRUCTION OF PROPERTY OF COMPANY, INCLUDING LOSS OF USE RESULTING THEREFROM AND ARISING OUT OF OR RESULTING FROM THIS AGREEMENT OR THE PERFORMANCE OF WORK HEREUNDER, IRRESPECTIVE OF CONTRACTOR'S FAULT OR NEGLIGENCE. WHEN ANY INJURIES, DEATH OR ILLNESS OR DAMAGE TO PROPERTY ARE SUSTAINED BY THIRD PARTIES, AND ARE THE CONCURRENT CONTRIBUTION OF BOTH COMPANY AND CONTRACTOR, EACH PARTY'S DUTY OF INDEMNIFICATION SHALL BE IN THE SAME PROPORTION THAT THE ACTS OR OMISSIONS OF EACH PARTY CONTRIBUTED TO THE INJURIES, DEATH OR ILLNESS OR DAMAGE TO PROPERTY.

14.    INSURANCE

14.1    Contractor agrees to carry and maintain the following insurance, from carriers with an A.M. Best rating of at least A-/VIII:

* * *

14.1.3    Commercial General Liability Insurance insuring the indemnity agreement set forth in this contract with a combined single limit of not less than $2,000,000 per occurrence and in the aggregate. All policies shall include coverage for blanket contractual liability assumed hereunder.

* * *

14.2    Solely to the extent of Consultant's indemnity obligation (with the exception of Worker's Compensation), all insurance policies carried by Contractor hereunder shall name (i) Midcontinent Express Pipeline LLC, (ii) its respective affiliates, and (iii) its and their affiliates' respective directors, officers, agents, and employees, and (iv) the respective successors and assigns of all of the foregoing entities and persons as additional insureds with respect to liability arising out of work performed by Contractor or subcontractor, as applicable.

* * *

14.5    Solely to the extent of Consultant's indemnity obligation, this insurance shall apply as primary insurance with respect to any other insurance or self-insurance programs afforded to or maintained by Company, and shall not require the exhaustion of any other coverage.

**The Insurance Policies**

8.    Lexington issued commercial general liability policy number 021435609 (the "Lexington Primary Policy") and commercial umbrella liability policy number 021404409 (the "Lexington Umbrella Policy") (collectively, the "Lexington Policies"), both effective September 16, 2008 to September 16, 2009, to named insureds Valarco, LLC ("Valarco") and Grand Bluff Construction Services, LLC ("Grand Bluff").  The Lexington Primary Policy provides limits of $1 million per occurrence and $10 million general aggregate.  The Lexington Umbrella Policy provides limits of $5 million per occurrence and $5 million general aggregate.  The MEP Parties are additional insureds under the Lexington Policies.

9.    The Lexington Primary Policy contains the following provision, entitled "Other Insurance," in relevant part:

4.    **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Policy, our obligations are limited as follows:

a.    **Primary Insurance**

This insurance is primary except when b. Excess Insurance, below, applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. Method of Sharing, below.

b.    **Excess Insurance**

This insurance is excess over:

---

* * *

(2)     Any other primary insurance available to you covering liability for damages arising out of the premises or operations or the "products-completed operations hazard" for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against a "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

* * *

c.     **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes an equal amount until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

10.     The Lexington Umbrella Policy contains the following provision, entitled "Other Insurance," in relevant part:

K.     **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance".  However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

11.     ACE American issued commercial general liability policy number HDO G2374918A, effective January 31, 2009 to January 31, 2010 (the "ACE American Policy"), to

---

**Plaintiff's Original Complaint for Declaratory Judgment**
**Page 43 of 49**

John Wood Group.   The ACE American Policy provides policy limits of $2 million per occurrence.  Mustang is an insured under the ACE American Policy.

12.     Upon information and belief, the ACE American Policy contains provisions under which ACE American has the right and duty to defend an insured in any claim or suit against it.

13.     The ACE American Policy contains Endorsement 20, entitled "Additional Insured Designated Person or Organization," which modifies the coverage provided under the policy form as follows:

> Section II – Who Is An Insured is amended to include as an additional insured any person or organization to whom you are obligated, in connection with your business, by written contract or written agreement, executed prior to the date of loss, to provide insurance such as is afforded by this policy, but not for broader coverage or greater limits of liability than is required by said contract or agreement and in no event, for broader coverage or greater limits of liability than is otherwise provided by the policy.  If other insurance is available to an insured we cover under this endorsement or described above (the "Additional Insured") for a loss we cover under this policy, this insurance will apply to such loss on a primary basis and we will not seek contribution from the other insurance available to the Additional Insured.

14.     Under the terms of Endorsement 20, the coverage afforded to an additional insured is primary to any other insurance with respect to a loss covered under the ACE American Policy.

**The Underlying Lawsuits**

15.     On or about July 15, 2009, an explosion occurred at a natural gas compressor station during a pipeline pressure test.  The pipeline was allegedly owned and operated by the MEP Parties.  The explosion was allegedly caused by an improperly assembled or designed separator cover or separator door that failed during the pipeline pressure test.  As a result of the explosion, one individual was killed and four others were allegedly injured.

16.     Five lawsuits were subsequently filed against, among others, the MEP Parties and Mustang (collectively, the "underlying lawsuits").  The underlying lawsuits are captioned as follows:

a.      *Jeremy Cannon and Carl Harrington v. Kinder Morgan, Inc., Kinder Morgan NatGas Operator, LLC, and Midcontinent Express Pipeline, LLC, et al.*; Cause No: 2009-52848 in the 189th Judicial District Court of Harris County, Texas;

b.      *Richard D. Lee and Leigh Ann Lee v. Kinder Morgan, Inc., Kinder Morgan NatGas Operator, LLC, et al.*; Cause No: 2011-14924 in the 133rd Judicial District Court of Harris County, Texas;

c.      *Judith Clare LeBlanc Candler and David Lynn Matthew v. Midcontinent Express Pipeline, LLC and Kinder Morgan, Inc., et al.*; Docket No. 92439 "E" in the 15th Judicial District, Parish of Vermilion, Louisiana;

d.      *David Lynn Matthew, et. al. v. Grand Bluff Construction Company, Inc. Midcontinent Express Pipeline, LLC, et al.*; Docket No. 92472 "D" in the 15th Judicial District, Parish of Vermilion, Louisiana;

> e. *Thomas Wayne Williams v Priority Energy Services, LLC, Midcontinent Express Pipeline, LLC, et al.*; Cause No. 2011-209 in the Circuit Court of Smith County, Mississippi.

17.     The underlying lawsuits allege that the defendants, including the MEP Parties and Mustang, were negligent in the following acts or omissions:

> a.     failure to perform a proper visual line inspection of the pipeline before pressure testing; failure to properly conduct pressure testing of the pipeline;
>
> b.     failure to supervise the pressure testing of the pipeline;
>
> c.     failure to properly service and direct the opening and closing of the separator door;
>
> d.     failure to safely design and engineer the separator and its door;
>
> e.     failure to warn of the dangers associated with opening and closing the separator door; and
>
> f.     failure to inform the underlying plaintiffs that the test pressure had been reached or 50% of the test pressure had been reached and to move beyond the perimeter.

18.     Lexington agreed to defend the MEP Parties in the underlying lawsuits under a reservation of rights.  To date, Lexington has incurred substantial costs and expenses as the sole insurer to undertake its obligations to defend the MEP Parties in the underlying lawsuits.

19.     Lexington, through counsel, tendered the defense of the MEP Parties to ACE American on July 29, 2011.  Nearly seven months later, on February 13, 2012, ACE American

denied coverage for the MEP Parties as additional insureds under the ACE American Policy and refused to defend the MEP Parties in the underlying lawsuits.

## CLAIM FOR RELIEF

20.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 19 and realleges those allegations as if fully set forth herein.

21.     A dispute has arisen between Plaintiff and ACE American with respect to whether the MEP Parties are additional insureds and entitled to coverage under the ACE American Policy, and whether ACE American is liable for contribution for the defense costs incurred by Lexington in the defense of the MEP parties.

22.     Plaintiff has taken the position that the MEP Parties are additional insureds under the ACE American Policy because the PSA requires that Mustang's insurance policies, including the ACE American Policy, name the MEP Parties as additional insureds.   Plaintiff further contends that Endorsement 20 to the ACE American Policy expressly provides additional insured status to the MEP Parties as parties to whom Mustang was obligated by written agreement to provide insurance.

23.     Plaintiff has also taken the position that ACE American owed and continues to owe the MEP Parties, as additional insureds, a defense in the underlying lawsuits.   Plaintiff contends that, because of the defense obligation under the ACE American Policy, ACE American owes contribution for past and future defense costs and expenses to Lexington who has exclusively shouldered, and continues to bear, the cost and expense of defending the MEP Parties in the underlying lawsuits.

24.     Plaintiff contends that the ACE American Policy is primary to the Lexington Policies, and, as such, is liable to Lexington for all defense costs and expenses incurred in the

defense of the MEP Parties.  In the alternative, Plaintiff contends that the defense costs and expenses incurred in defending the MEP Parties should be shared between Plaintiff and Defendant on a *pro rata* basis.

## CONCLUSION AND PRAYER

25.    Lexington respectfully asks this Court for a judgment that (1) the MEP Parties are additional insureds under the ACE American Policy; (2) ACE American owes a defense to the MEP Parties; and (3) ACE American is liable to Lexington for all costs and expenses that have been and will be incurred for the defense of the MEP Parties in the underlying lawsuits, or, in the alternative, that ACE American is liable to Lexington for contribution, on a *pro rata* basis, for the cost and expense of defending the MEP Parties..

26.    Lexington further asks for such other relief to which Lexington may be entitled in law or in equity.

Respectfully submitted,

Date:  February 22, 2012          /s/ Harrison H. Yoss
                                  Harrison H. Yoss
                                  Attorney-in-charge
                                  Texas State Bar No. 2216930
                                  Southern District of Texas Bar No. 17055
                                  hyoss@thompsoncoe.com

                                  Thompson, Coe, Cousins & Irons LLP
                                  700 N. Pearl Street, 25th Floor
                                  Dallas, Texas 75201-2832
                                  Tel. (214) 871-8259
                                  Fax (214) 871-8209

                                  *Attorneys for Lexington Insurance Company*