IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **LEXINGTON INSURANCE COMPANY** § | |
| § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:12-CV-00531 |
| § | |
| **ACE AMERICAN INSURANCE** § | |
| **COMPANY** § | |
| § | |
| *Defendant*. § | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE COURT:

Lexington Insurance Company ("Lexington" or "Plaintiff"), by its attorneys, petitions this court pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Texas Civil Practices & Remedies Code § 37.001, *et seq.*, and Federal Rule of Civil Procedure 57 for construction of insurance policies and a declaration that: (1) Midcontinent Express Pipeline, LLC ("MEP") and its affiliates, Kinder Morgan, Inc. and Kinder Morgan NatGas Operator, LLC (collectively, the "MEP Parties") are additional insureds under primary and umbrella insurance policies issued by Defendant ACE American Insurance Company ("ACE" or "Defendant"); (2) the MEP Parties are entitled to a defense of underlying lawsuits related to a gas pipeline explosion as additional insureds under the insurance policies issued by ACE; and (3) ACE is liable to Lexington for the costs and expenses that have been and will be incurred defending the MEP Parties in the underlying lawsuits.

In support thereof, Lexington alleges and states as follows:

## PARTIES

1. Lexington is a Delaware corporation with its principal place of business at 100 Summer Street, Boston, Massachusetts, 02110-2103.

2. Upon information and belief, Defendant ACE is a Pennsylvania corporation with a principal place of business at 436 Walnut Street, Philadelphia, PA 19106. ACE may be served with process through its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Texas, 75201.

## JURISDICTION AND VENUE

3. The amount in controversy in this action is in excess of $75,000, exclusive of interest and costs. The parties to this lawsuit are domiciled in different states and there is complete diversity. Therefore, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

4. Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Houston, Texas, including, but not limited to, the formation and execution of the agreement providing the MEP Parties with additional insured status under the ACE insurance policies.

5. This Court has personal jurisdiction over ACE. ACE has minimum contacts with Texas by issuing the insurance policy at issue in this action to a Texas entity and by issuing the policy with the knowledge and expectation that it would cover risks partially or substantially occurring in Texas. Accordingly, ACE has purposely availed itself of the benefits and protections of Texas law and is subject to this Court's jurisdiction.

# FACTUAL BACKGROUND

**The Professional Services Agreement between MEP and Mustang**

6. MEP and Mustang Engineering L.P. ("Mustang") entered into a Professional Services Agreement (the "PSA") effective January 1, 2007 and executed by Mustang and MEP on January 30, 2007 and February 28, 2007, respectively.

7. The PSA, in relevant part, contains the following provisions:

> 13. <u>GENERAL INDEMNITY</u>
>
> CONTRACTOR SHALL DEFEND, INDEMNIFY, AND HOLD COMPANY HARMLESS FROM AND AGAINST ALL CLAIMS, DAMAGES, LIABILITY, LOSSES AND EXPENSES INCLUDING, BUT NOT LIMITED TO, ATTORNEY'S FEES AND OTHER COSTS OF DEFENSE ATTRIBUTABLE TO BODILY INJURY, SICKNESS, DISEASE, DEATH OR INJURY TO THE EMPLOYEES OF CONTRACTOR OR DESTRUCTION OF PROPERTY OF CONTRACTOR, INCLUDING LOSS OF USE RESULTING THEREFROM AND ARISING OUT OF OR RESULTING FROM THIS AGREEMENT OR THE PERFORMANCE OF WORK HEREUNDER, IRRESPECTIVE OF COMPANY'S FAULT OR NEGLIGENCE. LIKEWISE, COMPANY SHALL DEFEND, INDEMNIFY AND HOLD CONTRACTOR HARMLESS FROM AND AGAINST ALL CLAIMS, DAMAGES, LIABILITY, LOSSES AND EXPENSES INCLUDING BUT NOT LIMITED TO ATTORNEY'S FEES AND OTHER COSTS OF DEFENSE ATTRIBUTABLE TO BODILY INJURY, SICKNESS, DISEASE, DEATH OR INJURY TO THE EMPLOYEES OF COMPANY OR DESTRUCTION OF PROPERTY OF COMPANY, INCLUDING LOSS OF USE RESULTING THEREFROM AND ARISING OUT OF OR RESULTING FROM THIS AGREEMENT OR THE PERFORMANCE OF WORK HEREUNDER, IRRESPECTIVE OF CONTRACTOR'S FAULT OR NEGLIGENCE. WHEN ANY INJURIES, DEATH OR ILLNESS OR DAMAGE TO PROPERTY ARE SUSTAINED BY THIRD PARTIES, AND ARE THE CONCURRENT CONTRIBUTION OF BOTH COMPANY AND CONTRACTOR, EACH PARTY'S DUTY OF INDEMNIFICATION SHALL BE IN THE SAME PROPORTION THAT THE ACTS OR OMISSIONS OF EACH PARTY CONTRIBUTED TO THE INJURIES, DEATH OR ILLNESS OR DAMAGE TO PROPERTY.
>
> 14. <u>INSURANCE</u>
>
> 14.1   Contractor agrees to carry and maintain the following insurance, from carriers with an A.M. Best rating of at least A-/VIII:
>
> * * *

    14.1.3    <u>Commercial General Liability Insurance</u> insuring the indemnity agreement set forth in this contract with a combined single limit of not less than $2,000,000 per occurrence and in the aggregate. All policies shall include coverage for blanket contractual liability assumed hereunder.

* * *

    14.2    Solely to the extent of Consultant's indemnity obligation (with the exception of Worker's Compensation), all insurance policies carried by Contractor hereunder shall name (i) Midcontinent Express Pipeline LLC, (ii) its respective affiliates, and (iii) its and their affiliates' respective directors, officers, agents, and employees, and (iv) the respective successors and assigns of all of the foregoing entities and persons as additional insureds with respect to liability arising out of work performed by Contractor or subcontractor, as applicable.

* * *

    14.5    Solely to the extent of Consultant's indemnity obligation, this insurance shall apply as primary insurance with respect to any other insurance or self-insurance programs afforded to or maintained by Company, and shall not require the exhaustion of any other coverage.

**The Insurance Policies**

8.    Lexington issued commercial general liability policy number 021435609 (the "Lexington Primary Policy") and commercial umbrella liability policy number 021404409 (the "Lexington Umbrella Policy") (collectively, the "Lexington Policies"), both effective September 16, 2008 to September 16, 2009, to named insureds Valarco, LLC ("Valarco") and Grand Bluff Construction Services, LLC ("Grand Bluff"). The Lexington Primary Policy provides limits of $1 million per occurrence and $10 million general aggregate. The Lexington Umbrella Policy provides limits of $5 million per occurrence and $5 million general aggregate. The MEP Parties are additional insureds under the Lexington Policies.

9.    The Lexington Primary Policy contains the following provision, entitled "Other Insurance," in relevant part:

    **4.**    **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Policy, our obligations are limited as follows:

    **a.**    **Primary Insurance**

This insurance is primary except when b. Excess Insurance, below, applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. Method of Sharing, below.

    **b.**    **Excess Insurance**

This insurance is excess over:

* * *

(2)    Any other primary insurance available to you covering liability for damages arising out of the premises or operations or the "products-completed operations hazard" for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against a "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

* * *

    **c.**    **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes an equal amount until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

10. The Lexington Umbrella Policy contains the following provision, entitled "Other Insurance," in relevant part:

> **K. Other Insurance**
>
> If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance". However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

11. ACE issued commercial general liability policy number HDO G2374918A, effective January 31, 2009 to January 31, 2010 (the "ACE Primary Policy"), to John Wood Group. The ACE Primary Policy provides policy limits of $2 million per occurrence. ACE also issued commercial umbrella liability policy number XOO G24876238, effective January 31, 2009 to January 31, 2010 (the "ACE Umbrella Policy") to John Wood Group PLC and Subsidiary Companies and Rolls Wood Group (Repairs and Overhauls) Ltd and Subsidiary Companies and Joint Ventures as Declared to Insurer (collectively, the "ACE Policies"). The ACE Umbrella Policy provides a per occurrence and aggregate policy limit of $15 million. Mustang is an insured under the ACE Policies. The ACE Umbrella Policy lists the ACE Primary Policy as underlying insurance in its schedule of underlying insurance.

12. The ACE Primary Policy provides that ACE "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The "bodily injury" or "property damage" must be caused by an "occurrence." The ACE Primary Policy also provides that ACE "will have the right and duty to defend the insured against any 'suit' seeking those damages."

13. The ACE Primary Policy contains Endorsement 20, entitled "Additional Insured Designated Person or Organization," which modifies the coverage provided under the policy form as follows:

>Section II – Who Is An Insured is amended to include as an additional insured any person or organization to whom you are obligated, in connection with your business, by written contract or written agreement, executed prior to the date of loss, to provide insurance such as is afforded by this policy, but not for broader coverage or greater limits of liability than is required by said contract or agreement and in no event, for broader coverage or greater limits of liability than is otherwise provided by the policy.  If other insurance is available to an insured we cover under this endorsement or described above (the "Additional Insured") for a loss we cover under this policy, this insurance will apply to such loss on a primary basis and we will not seek contribution from the other insurance available to the Additional Insured.

14. Under the terms of Endorsement 20, the coverage afforded to an additional insured is primary to any other insurance with respect to a loss covered under the ACE Primary Policy.

15. The ACE Umbrella Policy provides that ACE "will pay on behalf of the INSURED all sums that the INSURED shall become legally obligated to pay as damages because of BODILY INJURY . . . or PROPERTY DAMAGE, to which this policy applies that takes place during the POLICY PERIOD."  The ACE Umbrella Policy further provides:

>b. With respect to any OCCURRENCE (1) not covered by the UNDERLYING INSURANCE or any OTHER INSURANCE, or (2) unavailable because of the exhaustion of aggregate limits of insurance, but covered by the terms and conditions of this policy, WE shall defend such SUIT against the INSURED seeking damages on account of BODILY INJURY . . . or PROPERTY DAMAGE . . .

16. The ACE Umbrella Policy also provides coverage to additional insureds under the following provision:

>3. Each of the following is also an INSURED:
>
>\* \* \*
>
>e. Any person or organization included as an Additional Insured in the UNDERLYING INSURANCE and for the full limits of liability shown therein, but only to the extent that such insurance is afforded said person or organization in the UNDERLYING INSURANCE.

17. The ACE Umbrella Policy states that, in the event the limits of underlying insurance are exhausted from payments arising out of bodily injury or property damage which takes place during the policy period, the ACE Umbrella Policy will "continue in force as UNDERLYING INSURANCE."

**The Underlying Lawsuits**

18. On or about July 15, 2009, an explosion occurred at a natural gas compressor station during a pipeline pressure test. The pipeline was allegedly owned and operated by the MEP Parties. The explosion was allegedly caused by an improperly assembled or designed separator cover or separator door that failed during the pipeline pressure test. As a result of the explosion, one individual was killed and four others were allegedly injured.

19. Eight lawsuits have been subsequently filed against, among others, the MEP Parties and Mustang (collectively, the "underlying lawsuits"). The underlying lawsuits are captioned as follows:

   a. *Jeremy Cannon and Carl Harrington v. Kinder Morgan, Inc., Kinder Morgan NatGas Operator, LLC, and Midcontinent Express Pipeline, LLC, et al.*; Cause No: 2009-52848 in the 189th Judicial District Court of Harris County, Texas;

   b. *Richard D. Lee and Leigh Ann Lee v. Kinder Morgan, Inc., Kinder Morgan NatGas Operator, LLC, et al.*; Cause No: 2011-14924 in the 133rd Judicial District Court of Harris County, Texas;

   c. *Judith Clare LeBlanc Candler and David Lynn Matthew v. Midcontinent Express Pipeline, LLC and Kinder Morgan, Inc., et al.*; Docket No. 92439 "E" in the 15th Judicial District, Parish of Vermilion, Louisiana;

   d. *David Lynn Matthew, et al. v. Grand Bluff Construction Company, Inc. Midcontinent Express Pipeline, LLC, et al.*; Docket No. 92472 "D" in the 15th Judicial District, Parish of Vermilion, Louisiana;

   e. *Thomas Wayne Williams v Priority Energy Services, LLC, Midcontinent Express Pipeline, LLC, et al.*; Cause No. 2011-209 in the Circuit Court of Smith County, Mississippi;

      f.      *Bryce Case v. Kinder Morgan, Inc., et al.*; Cause No. 2012-207 in the Circuit Court of Smith County, Mississippi;

      g.      *Casey Bertrand v. Kinder Morgan, Inc., et al.*; Cause No. 2012-208 in the Circuit Court of Smith County, Mississippi;

      h.      *Dillan Guillory v. Kinder Morgan, Inc., et al.*; Cause No. 2012-209 in the Circuit Court of Smith County, Mississippi.

20. The underlying lawsuits allege that the defendants, including the MEP Parties and Mustang, were negligent through at least the following acts or omissions:

      a.      failure to perform a proper visual line inspection of the pipeline before pressure testing;

      b.      failure to properly conduct pressure testing of the pipeline;

      c.      failure to supervise the pressure testing of the pipeline;

      d.      failure to properly service and direct the opening and closing of the separator door;

      e.      failure to safely design and engineer the separator and its door;

      f.      failure to warn of the dangers associated with opening and closing the separator door; and

      g.      failure to inform the underlying plaintiffs that the test pressure had been reached or 50% of the test pressure had been reached and to move beyond the perimeter.

21. Lexington agreed to defend the MEP Parties in the underlying lawsuits under a reservation of rights. To date, Lexington has incurred substantial costs and expenses as the sole insurer to undertake its obligations to defend the MEP Parties in the underlying lawsuits.

22. Lexington, through counsel, tendered the defense of the MEP Parties to ACE on July 29, 2011. Nearly seven months later, on February 13, 2012, ACE denied coverage for the MEP Parties as additional insureds under the ACE Policies and refused to defend the MEP Parties in the underlying lawsuits.

23. Upon information and belief, the ACE Primary Policy has been exhausted through payments made on behalf of ACE's insureds in the underlying lawsuits.

## CLAIM FOR RELIEF – DECLARATORY JUDGMENT

24. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 23 and realleges those allegations as if fully set forth herein.

25. A dispute has arisen between Plaintiff and ACE with respect to whether the MEP Parties are additional insureds and entitled to coverage under the ACE Policies, and whether and to what extent ACE is liable to Lexington for defense costs incurred in the defense of the MEP parties.

26. The MEP Parties are additional insureds under the ACE Policies because the PSA requires that Mustang's insurance policies name the MEP Parties as additional insureds. Endorsement 20 to the ACE Primary Policy expressly provides additional insured status to the MEP Parties as parties to whom Mustang was obligated by written agreement to provide insurance.

27. As additional insureds under the ACE Primary Policy, the MEP Parties are also entitled to additional insured coverage under the ACE Umbrella Policy with respect to a defense in the underlying lawsuits. Upon the exhaustion of the ACE Primary Policy, the ACE Umbrella Policy provided, and continues to provide, coverage to additional insureds otherwise entitled to coverage under the ACE Primary Policy.

28. ACE owed and continues to owe the MEP Parties a defense in the underlying lawsuits as additional insureds under the ACE Policies. Because of its defense obligation under the ACE Policies, ACE is liable to Lexington for any and all defense costs and expenses

Lexington has incurred in light of the fact that Lexington has exclusively shouldered, and continues to bear, the cost and expense of defending the MEP Parties in the underlying lawsuits.

29. The ACE Policies are primary to the Lexington Policies, and, as such, ACE was, and continues to be, obligated to provide a complete defense to the MEP Parties in the underlying lawsuits. Lexington is entitled, by virtue of contractual and equitable subrogation rights, to recover all defense costs and expenses incurred in the defense of the MEP Parties from ACE for the latter's breach of its obligations under the ACE Policies.

30. Alternatively, Plaintiff contends that Lexington is entitled to recover contribution from ACE for its pro rata share of the defense costs and expenses incurred in defending the MEP Parties to date and for its pro rata share of all defense costs incurred through the resolution of the underlying lawsuits.

## CONCLUSION AND PRAYER

31. Lexington respectfully asks this Court for a judgment that:

 a. the MEP Parties are additional insureds under the ACE Primary Policy and the ACE Umbrella Policy;

 b. ACE owes a complete defense to the MEP Parties under the ACE Primary Policy and the ACE Umbrella Policy; and

 c. Lexington's contractual and equitable subrogation rights entitle it to recover all costs and expenses that have been and will be incurred in defending the MEP Parties in the underlying lawsuits from ACE, or, alternatively, that ACE is liable to Lexington for contribution for ACE's pro rata share of the costs and expenses of defending the MEP Parties.

32. Lexington further asks for such other relief to which Lexington may be entitled in law or in equity.

        Respectfully submitted,

        WRIGHT & CLOSE, LLP

        /s/ *Thomas C. Wright*
        Attorney-in-Charge
        Thomas C. Wright
        State Bar No. 22059400
        Federal ID No. 2729
        wright@wrightclose.com
        Attorney-in-Charge
        Henry S. Platts, Jr.
        State Bar No. 00784770
        Federal ID No. 15613
        platts@wrightclose.com
        Natasha N. Taylor
        State Bar No. 24071117
        Federal ID No. 1102665
        taylor@wrightclose.com
        One Riverway, Suite 2200
        Houston, Texas 77056
        Telephone: (713) 572-4321
        Facsimile: (713) 572-4320

        *Counsel for Plaintiff Lexington Insurance Company*

## CERTIFICATE OF SERVICE

    I hereby certify that on March 3, 2015, a true and correct copy of the foregoing was electronically filed with the U.S. District Court for the Southern District of Texas, Houston Division and served on the following counsel of record in accordance with the Federal Rules of Civil Procedure:

W. Neil Rambin
Leah Kimberly Steele
SEDGWICK LLP
1717 Main Street, Suite 5400
Dallas, TX 75201
neil.rambin@sedgwicklaw.com
kimberly.steele@sedgwicklaw.com
*Counsel for Defendant*
*ACE American Insurance Company*        /s/ *Henry S. Platts, Jr.*
                                                                            Henry S. Platts, Jr.