UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-531 |
| | § | |
| ACE AMERICAN INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ORDER AND OPINION

On July 7, 2104, this Court issued an interlocutory order granting Lexington Insurance Company's ("Lexington's") Motion for Summary Judgment and denying ACE American Insurance Company's ("Ace's") First-Amended Cross-Motion for Summary Judgment in this case. (Document No. 36). On March 4, 2015, Ace filed a Motion for Reconsideration (Document No. 83) of the Court's interlocutory order based on the Texas Supreme Court's opinion in *In re Deepwater Horizon*, 470 S.W.3d 452, 2015 WL 674744 (Tex. Feb. 13, 2015) ("*Deepwater Horizon*"). This Court initially postponed consideration of Ace's Motion for Reconsideration as premature until the Texas Supreme Court's decision was released for publication and was no longer subject to revision (Document No. 85), and later denied Ace's Motion without prejudice because of the continued pendency of the *In re Deepwater Horizon* decision. (Document No. 86). Now that *In Re Deepwater Horizon* is final, Ace has filed a Renewed Motion for Reconsideration (Document No. 87). Lexington has filed a Response (Document No. 92), and thereafter Ace filed a Reply. (Document No. 94). Having considered these filings, the facts in the record, and the applicable law, the Court concludes that Ace's Motion for Reconsideration (Document No. 87) is DENIED.

Background

The Court hereby incorporates the extensive background detailed in its previous order. (Document No. 36).

Standard of Review

Although the Federal Rules of Civil Procedure do not recognize a general motion for reconsideration,[1] courts address such motions under Rules 54(b) for interlocutory orders, and under Rules 59 and 60 for final judgments. *Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) (citing *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir. 1991); *U.S. Bank Nat'l Assoc. v. Verizon Communications, Inc.*, Civ. A. No. 3:10-CV-1842-G, 2012 WL 3034707, at *1 (N.D. Tex. July 25, 2012)). A ruling denying a dispositive motion is an interlocutory judgment under Rule 54(b). *Id.* (citing *Moody v. Seaside Lanes*, 825 F.2d 81, 85 (5th Cir. 1987) ("explaining that only the resolution of an entire adversary proceeding is 'final'")). Rule 54(b) states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and inabilities." The standard of review for reconsideration of interlocutory orders is "'as justice requires.'" *Contango Operators, Inc. v. U.S.*, 965 F. Supp. 2d 791, 800 (S.D. Tex. 2013) (citing *Judicial Watch v. Dep't of the Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) ("requiring a determination of whether reconsideration is necessary under the relevant circumstances"); *Dos Santos*, 651 F. Supp. 2d at 553 ("whether to grant such a motion rests within the discretion of the court")). See also *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 726-27 (5th Cir. 2012)

---

[1] *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997).

("Rule 54 provides district court judges with authority to vacate their own findings.").[2] "The standard requires a determination of 'whether reconsideration is necessary under the relevant circumstances.' Underlying a motion for reconsideration is 'the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Id.* (quoting *Judicial Watch*, 466 F. Supp. 2d at 123).

Discussion

Ace's initial Motion for Reconsideration asks the Court to "revisit the relationship between the additional insured provision in the ACE Policy and the applicable provisions of the PSA, and, upon doing so, conclude that ACE is entitled to summary judgment rather than Lexington." (Document No. 83 at 2). Ace insists that the Court's previous order is "inconsistent with the Supreme Court's holding in *Deepwater Horizon*" in its finding that "the scope of the indemnity obligation set forth in the PSA does not operate to limit the additional insured[3] coverage owed to the MEP Parties under the ACE Policy." *Id*. at 6.

As an initial matter, the Court agrees with Lexington that *Deepwater Horizon* does not present an intervening change in the controlling law; it does not expressly overrule any previous case law. (Document No. 92 at 4). In fact, *Deepwater Horizon* specifically states that "[o]ur application of these foundational principles in *Urrutia* and *ATOFINA* guides our analysis of the policies and Drilling Contract at issue here." 470 S.W.3d at 460. For this reason alone, Ace's

---

[2] *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.* also explains that "[g]enerally, under the law of the case doctrine, courts show deference to decisions already made in the case they are presiding over. The law of the case doctrine, however, 'does not operate to prevent a district court from reconsidering prior rulings.'" 677 F.3d 720, 726-27 (5th Cir. 2012) (citing *Zarnow v. City of Wichita Falls, Tex.,* 614 F.3d 161, 171 (5th Cir. 2010)).

[3] The PSA states that,
> *Solely to the extent of Consultant's [Mustang's] indemnity obligation* (with the exception of Worker's Compensation) all insurance policies carried by the Contractor [Mustang] hereunder shall name (i) Midcontinent Express Pipeline LLC, (ii) its respective affiliates, and (iii) its and their affiliates' respective directors, officers, agents, and employees, and (iv) the respective successors and assigns of all the foregoing entities and persons as additional insureds with respect to liability arising out of work performed by Contractor [Mustang] or subcontractor, as applicable. . . .

(Document No. 36 at 7) (emphasis added).

Motion should be denied. Ace will have the opportunity to appeal the Court's ruling with the Fifth Circuit if it desires to, and, without a definitive change to the law, Lexington should be not forced to argue its points again. *See Contango Operators*, 965 F. Supp. 2d at 800 (finding that justice did not require reconsideration of court's previous order). However given the importance of the *Deepwater Horizon* decision, as noted by Ace (Document No. 94 at 2-3), the Court will briefly consider Ace's Motion, pursuant to its discretion under Rule 54(b).

Even if the Court were to interpret the contracts as Ace requests (i.e. limiting additional insured coverage "solely to the extent of" the PSA's indemnity obligation) the result of the Court's prior order does not change. Regarding third party claims, the indemnity obligation in the PSA provides that:

> WHEN ANY INJURIES, DEATH OR ILLNESS OR DAMAGE TO PROPERTY ARE SUSTAINED BY THIRD PARTIES, AND ARE THE CONCURRENT CONTRIBUTION OF BOTH COMPANY AND CONTRACTOR, EACH PARTY'S DUTY OF INDEMNIFICATION SHALL BE IN THE SAME PROPORTION THAT THE ACTS OR OMISSIONS OF EACH PARTY CONTRIBUTED TO THE INJURIES, DEATH OR ILLNESS OR DAMAGE TO PROPERTY.

(Document No. 36 at 6-7). The third party claims here *do* trigger this indemnity obligation, as the Court previously explained: "The plaintiffs in all eight suits are employees of contractors other than Mustang or the MEP Parties, and therefore are third parties, and they have claimed that Mustang and the MEP Parties are responsible for the bodily injuries or the deaths of the plaintiffs." *Id*. at 29. Ace has agreed with this fact in its prior arguments that "Mustang agreed [] to indemnify the MEP Parties for that proportional share of any settlement or judgment that corresponds to Mustang's percentage of negligence or fault that contributed to the loss at issue (with MEP having the same obligation to Mustang)." *Id*. at 40. Because the plaintiffs' claims do fall under the indemnity obligation, the MEP Parties receive coverage as additional insureds. This coverage includes a duty to defend:

> (1) ACE "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies"; (2) the "'bodily injury or 'property damage' must be caused by an 'occurrence'"; and (3) ACE "will have the right and *duty to defend* the insured against any 'suit' seeking those damages."

*Id*. at 10. "If any allegation in the complaint is even *potentially* covered by the policy then the insurer has a duty to defend its insured." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d546, 552 (5th Cir. 2000) (emphasis in original). Ace has a duty to defend, because the plaintiffs' allegations are covered under the indemnity.

Ace makes much of the fact that "under section 13 of the PSA Mustang's indemnity obligation to MEP for third party claims does not include a duty to defend, hold harmless, or otherwise cover MEP's attorney's fees." (Document No. 36 at 54). In its entirety, Section 13 states:

> 13. GENERAL INDEMNITY
>
> CONTRACTOR [MUSTANG] SHALL *DEFEND*, INDEMNIFY, AND HOLD COMPANY [MEP] HARMLESS FROM AND AGAINST ALL CLAIMS, DAMAGES, LIABILITY, LOSSES AND EXPENSES INCLUDING, BUT NOT LIMITED TO, ATTORNEY'S FEES AND OTHER COSTS OF DEFENSE ATTRIBUTABLE TO BODILY INJURY, SICKNESS, DISEASE, DEATH OR INJURY TO THE EMPLOYEES OF CONTRACTOR OR DESTRUCTION OF PROPERTY OF CONTRACTOR, INCLUDING LOSS OF USE RESULTING THEREFROM AND ARISING OUT OF OR RESULTING FROM THIS AGREEMENT OR THE PERFORMANCE OF WORK HEREUNDER, IRRESPECTIVE OF COMPANY'S FAULT OR NEGLIGENCE.
>
> LIKEWISE COMPANY [MEP] SHALL *DEFEND*, INDEMNIFY AND HOLD CONTRACTOR [MUSTANG] HARMLESS FROM AND AGAINST ALL CLAIMS, DAMAGES, LIABILITY, LOSSES AND EXPENSES INCLUDING BUT NOT LIMITED TO ATTORNEY'S FEES AND OTHER COSTS OF DEFENSE ATTRIBUTABLE TO BODILY INJURY, SICKNESS, DISEASE, DEATH OR INJURY TO THE EMPLOYEES OF COMPANY OR DESTRUCTION OF PROPERTY OF COMPANY, INCLUDING LOSS OF USE RESULTING THEREFROM AND ARISING OUT OF OR RESULTING FROM THIS AGREEMENT OR THE PERFORMANCE OF WORK THEREUNDER, IRRESPECTIVE OF CONTRACTOR'S FAULT OR NEGLIGENCE.

> WHEN ANY INJURIES, DEATH OR ILLNESS OR DAMAGE TO PROPERTY ARE SUSTAINED BY *THIRD PARTIES*, AND ARE THE CONCURRENT CONTRIBUTION OF BOTH COMPANY AND CONTRACTOR, EACH PARTY'S DUTY OF INDEMNIFICATION SHALL BE IN THE SAME PROPORTION THAT THE ACTS OR OMISSIONS OF EACH PARTY CONTRIBUTED TO THE INJURIES, DEATH OR ILLNESS OR DAMAGE TO PROPERTY.[4]

(Document No. 36 at 6-7) (emphasis added). Ace is correct that the portion of this section referring specifically to third parties is silent regarding a duty to defend, whereas the previous sections, which refer to each party's employees and property, specifically mention a duty to defend. However, this silence does not have the meaning argued by Ace.

Stated simply, the indemnity provision demonstrates the intention that each party be responsible for *all* costs related to claims involving its own employees and property, but the parties will split the obligation according to fault when a third party is involved. Expressly including the duty to defend in the first two paragraphs serves two purposes: first it obligates Mustang to pay the duty to defend in suits relating to its own employees or property (and cover MEP as an additional insured for these suits); then the second paragraph excuses Mustang (and possibly its insurer) from paying the duty to defend in suits relating to MEP's employees or property. The silence on the duty to defend in the third paragraph does *neither* of these; the PSA shows no intent that the duty to defend be covered by *either* party. Therefore the terms of the insurance policy itself must determine the duty to defend.

This argument is bolstered by the differences between the duty to indemnify and the duty to defend; specifically the breadth of the duty to defend (compared to the duty to indemnify) suggests that it cannot be limited by the mere silence of the indemnity provision. As explained in the previous order:

> A liability insurer owes to its insured a duty to defend and a duty to indemnify. In

---

[4] This section is split into paragraphs here for ease of reference. In the PSA it is all one paragraph. (Document No. 23-6 at 16).

Texas the duty to defend and the duty to indemnify "are distinct and separate duties creating distinct and separate causes of action." *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W. 3d 740, 743 (Tex. 2009), cited for that proposition, *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011). "Thus an insurer may have a duty to defend but, eventually, no duty to indemnify." *Farmers Texas County Mutual Ins. Co. v. Griffin*, 955 S.W. 2d 81, 82 (Tex. 1997).[5]

> A duty to indemnify depends on the facts that establish liability in the underlying lawsuit and whether any damages caused by the insured and later proven at trial are covered by the terms of the insurance policy. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 844 (5th Cir. 2012); *D.R. Horton*, 300 S.W. 3d at 744. Therefore an insurer's duty to indemnify can only be determined after the underlying litigation has been resolved. *Id.*, citing *Columbia Cas. Co. v. Ga. & Fla. RailNet, Inc.*, 542 F.3d 106, 111 (5th Cir. 2008).
>
> An insurer's duty to defend is a question of law. *Id.*, quoting *Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469, -20- 471-72 (5th Cir. 2009). In Texas, under the "eight corners" rule, an insurer's duty to defend is determined by two documents, the third-party plaintiff's pleadings, without regard to the truth of those allegations, and the insurance policy. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 840 (5th Cir. 2012), citing *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W. 3d 305, 307-08 (Tex. 2006)(Facts outside the four corners of these two documents are generally "not material to the determination and allegations against the insured are liberally construed in favor of coverage."); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W. 2d 139, 141 (Tex. 1997). The court should read the allegations liberally, with any doubts resolved in favor of the insured. *Guar. Nat'l Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 243 (5th Cir. 2000). "Even if the allegations are groundless, false or fraudulent, the insurer is obligated to defend." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W. 3d 487, 491 (Tex. 2008). "If any allegation in the complaint is even *potentially* covered by the policy then the insurer has a duty to defend its insured." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2000)(emphases in original). The insurer's duty to defend "is broader than its duty to indemnify." *St. Paul & Marine Ins. Co. v. Green Tree Financial Corp.-Texas*, 249 F.3d 389, 391 (5th Cir. 2001), citing *St. Paul Ins. Co. v. Texas Dep't of Transp.*, 999 S.W. 2d 881, 884 (Tex. App.—Austin 1999, writ denied). If any portion of the underlying suit is covered, the insurer must defend the entire suit. *Id.*, citing *id*.

(Document No. 36 at 20-22). The extensive coverage of the duty to defend suggests that the

---

[5] Therefore it is not contradictory that Mustang could be obligated to provide insurance to MEP in defending third party suits, but not obligated to provide insurance for MEP's portion owed under the final judgment.

parties would have expressly limited it, if that had been their intention.

Even if Ace's argument were reasonable, the Court would still be required to favor the interpretation giving the most coverage to MEP. As explained in the previous order:

> If the policy is ambiguous, the court must adopt the construction most favorable to the insured and construe the policy against the drafter, i.e., the insurer. *Barnett v. Aetna Life Ins. Co.*, 723 S.W. 2d 663, 666 (Tex. 1987). "Texas law has consistently held that, if an insurance coverage provision is susceptible to more than one reasonable interpretation, the court must interpret the provision in favor of the insured, so long as that interpretation is reasonable. The court must do so even if the insurer's interpretation is more reasonable than the insured's—'[i]n particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured,' and '[a]n intent to exclude coverage must be expressed in clear and unambiguous language.'" *In re Deepwater Horizon*, 728 F.3d 491, 499 (5th Cir. 2013), citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pas. v. Hudson Energy Co.*, 811 S.W. 2d 552, 555 (Tex. 1991), and *Evanston Ins. Co. v. ATOFINA Petrochemicals*, Inc., 265 S.W. 3d 660, 668 n.27 (Tex. 2008). Exceptions or limits on liability especially are interpreted against the insurer and in favor of the insured. *Hudson Energy*, 811 S.W. 2d at 555.

(Document No. 36 at 19-20).[6] Under these rules of interpretation, it is all the more apparent that the indemnities section does not provide any limit on Ace's duty to defend third party lawsuits.

Conclusion

As described above, even if the Court were to interpret the contracts as desired by Ace, the indemnities section does not expressly limit coverage for the defense of third party claims. And, even if it could be interpreted to do so, the doctrine of *contra proferentem* requires the Court to interpret the coverage in the way most favorable to the insured. Therefore, the Court

ORDERS that Ace's Motion to Reconsider (Document No. 87) is DENIED.

SIGNED at Houston, Texas, this 14th day of June, 2016.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

[6] The Court rejected Ace's objections to the application of this doctrine, referred to as *contra proferentem*, in its previous order. (Document No. 36 at 51 n.19).